May it please the Court, I am James Ning Chun appearing on behalf of Telesaurus. This is a case where one provider of telecommunications services played by the rules and the other did not. We ask that this Court reverse the district court on two grounds, first on the grant of summary judgment against Telesaurus, and second on the imposition of Rule 11 sanctions against Telesaurus alone. I will walk through first an issue involving the we'll go ahead and for purposes of making the very first point, we will not concede this otherwise, but solely for purposes of argument. Let us take the appellee radio link at its word and say that it did not engage in common carrier services. So let's start from the very beginning of the FACSIS case. I would like, by the way, and I do very much apologize, would like to reserve five minutes for Keep your eye on the clock. This case began when Telesaurus applied for and successfully won very high frequency public coast frequencies in the auction. Radio link had applied but did not bid and ultimately lost. However, just a few months later managed to acquire the very same frequencies under a different procedure, but those frequencies were in the VPC range. The issue that we would like to focus on for purposes of the merits of this case is that the VPC frequencies were indeed classified by the FCC as commercial mobile radio service, which is a common carrier zone. Now, I do understand that this Court in the first case, Telesaurus I, said that the issue of liability does not turn under Section 206 of the 47, Title 47 of the United States Code, does not turn on the classification, but rather on the service actually provided. And we set it back for that specific reason, for findings to determine whether they're a common carrier. Yes. And the very issue is that if you take what the appellee did in this case. No, I thought that we sent it back to see if you could amend. Yes. And in fact, the amended complaint did provide, I believe in paragraph 10, a citation to Rule 20.9 of the Federal Communications Commission. And under that rule, if a licensee, such as Radiolink at the time, holds spectrum in the VPC range, and this spectrum in license WPOX-212 included spectrum in the lower 157 megahertz band, which is VPC spectrum. If you hold that spectrum and you propose to provide private service, which is defined under the rules of the commission as being not interconnected and not offered to the public on an indiscriminate basis, they say that's exactly what they did. Let's take them at their word for that. If they did that, they violated Rule 20.9, which says that if you are a licensee, particularly paragraph B says if you are a licensee holding spectrum in very high frequency public coasts, that spectrum, you have to overcome a presumption that you're operating on a CMRS basis. And in fact, you have to petition the commission for permission to convert. Let me help you move along. I understand. I think you're saying this so that we will understand that they were wrongfully using this spectrum. That's correct. And the whole point is that the service that they provide. And we are, we urge that the Court grant, reverse the grant of summary judgment precisely because that is legal error. Well, but wait a minute. There are lots of ways in which you might have lost. One of them, and it seemed to me actually Judge Waite could have thrown you out of court a lot earlier, because the only way you can recover monetary recovery from them is showing of actual harm to your client. And I gather that you say right out loud, I mean, I read the transcript, where you say, well, no, there actually hasn't been any harm. We're operating on a theory of unjust enrichment because they weren't supposed to do that. Game over. Thank you very much, Your Honor. With all due respect, that was an answer to a different question. The question was whether there was interference with ongoing operations. And there was no interference. It was a correct answer. There was no interference with ongoing operations. The point was that our client was not able to engage in operations at all because you see the fact that this other party, Radio Link, was transmitting over those frequencies. Let me ask the question in a different way. Yes. Did you present evidence in the district court as to harm that your client suffered? They certainly pled it. They never got to the point to this. But the reason that the harm did occur was, and this was presented, was that Telesaurus had attempted to develop its spectrum with other parties. The other parties said, we can't do business with you. There's already traffic being carried on those frequencies. How can you possibly do business because Radio Link was doing it? And that's consequential harm and that can be reached under 208. Okay. And, in fact, the disgorgement theory is completely supportable and quickly addresses because if you have been cut off from doing your own business, the other party's business and what they get from it is at least a first cut at what should be. But let me move on to the question of Rule 11 sanction. We also believe that there was evidence of interconnected service and indiscriminate offering, at least to a specialized portion of the public, namely school districts and public safety agencies. Those, we believe, would qualify for summary judgment. But at an absolute minimum, even if those showings did not suffice to satisfy the remand for demonstration of interconnection and for offering indiscriminately to the public at large or to a specialized portion of the public, at least sufficed to demonstrate a reasonable expectation after information and belief at the time of the filing of the second amended complaint that there would be evidence to support those assertions. And that should be enough to warrant reversal of the sanctions award because of the sufficiency. Now, more to the point, if you look at the sanctions award, we believe that it is in direct contravention of the language of Rule 11. You may be that Rule 11 doesn't, you may complain that Rule 11 doesn't say what it means. You may disagree with it, but we certainly know that Rule 11 means what it says. Rule 11 in paragraph B says very explicitly that you violate it by presenting to the court a pleading, whether by signing or otherwise, an attorney or unrepresented party certifies. Paragraph B is in the active voice. Paragraph C is in the passive voice. If, after an opportunity to respond, the court determines that Rule 11B has been violated, the court may impose an appropriate sanction on any attorney, law firm or party that violated the rule or is responsible. But the district court took pains to say that no attorney had violated the rule. Doesn't the second part overlap or reject your argument that you make in the first? That is, in the latter paragraph, it says attorney or party, not and party, so that you can grant sanctions against a party without granting against a lawyer. But you see, in paragraph B, it does say party. It says an attorney or unrepresented party certifies. That's right. But in the next paragraph, it says or. Yes, it says or party. And that party could refer to the unrepresented party in paragraph B. It was always said that this particular order imposed the violation, excuse me, the sanctions on Telesaurus as a responsible party or is responsible for the violation. But the problem is that the way that the order imposed sanctions, there was no party that could have violated the rule under paragraph B. Paragraph B says by presenting to the court an attorney or unrepresented party certifies. Yeah. Yeah, that's in a situation where you have a pro se or a lawyer. But you're saying that rule 11, in rule 11, you can never certify. You can never penalize a party. No, that's not what I'm saying. There are certainly circumstances where that could happen, but this is not one of them. Because, you see, this particular party was represented. This particular party, through counsel, made these representations. Yeah, but I think you may be ignoring the language in C-1, a party that violated the rule or is responsible for the violation. I think that takes care of the party who somehow does something that gets his lawyer to do something that violates it. But the point is that this party followed advice of counsel. That was teased out through this particular course of rule 11 proceedings. And this particular party, the court took pains and emphasized this. The language of B can only apply, only apply, to someone who certifies. And that the subject of that sentence is an attorney or unrepresented party. And it doesn't say that the certification has to be by the attorney or the represented party. That second part is restricted, so it has to be the attorney. And because it has to be the attorney, this Court had to find, the district court had to find a violation by one of those two. The district court foreswore that and said there is no, nothing, they did nothing wrong, therefore. You mean they, meaning the local attorney? Yes, the attorney did nothing wrong. There are cases, I mean, we all went through this for our practice, where the attorney, local attorney is hired, but all the decisions are made by the home office. And what you're saying is that this attorney is only the, following the directions of what happens in the home office, and the home office actually is the one that does the conduct which the judge then wants to penalize, that you can't do it in this case because there's a lawyer in the courtroom who's working as the reference lawyer. What I wish to emphasize, Your Honor, is that in paragraph C, paragraph C can only be triggered where the court has found a specific violation of paragraph B, but that paragraph B violation, which acts in the active voice, could not have happened because it was neither an attorney nor an unrepresented party. And more to the point, under paragraph, subparagraph 3, the assertions did have support, at least on an information and belief basis. It cannot be that you can cite something you can make assertions on an information and belief basis only to lose and get sanctioned after when it turns out that you didn't have the support. I have gone way over that, but I would like to reserve time. Roberts, I'm going to call you from the other side and you have some time. Thank you. May it please the Court. Good morning, Your Honor. Roger Cohen appearing on behalf of Radiolink Corporation. What was fascinating about the argument we just heard, and I understand it was qualified by the admission that this was for this purpose only, but I did not hear one fact, one statement, one anything to suggest that Radiolink ever offered services as a common carrier. And there's a reason for that. The reason for that is there is no evidence. Radiolink never was a common carrier. If I understand this, we got rid of 90 percent of this case in the first decision. We sent it back for them to amend in order to show the common carrier. Correction. When they amended, what did they allege? Well, they alleged generically that the tracking the elements of the statute. They alleged generically that the service was operated for or offered for profit. They alleged generically that the system was interconnected with the public switch network. And they alleged generically that service was offered on an undifferentiated basis to the public or substantial portion. Essentially the language, the definition. That's correct, Your Honor. And what the district court found is that that was sufficient to satisfy the formal requirements of a complaint, and therefore they get passed a motion to dismiss for failure to state a claim under Rule 12. But that has nothing to do with the factual underpinnings, and that's why we get to Rule 11. That's why the district court looked at the record, I take it. Certainly, Your Honor, because then when we got to the ultimate decision was on a summary judgment motion where the district court properly looked at the record to see whether the plaintiff had put forth any specific evidence sufficient to rebut the factual showing by the defendant, in this case Radiolink, that its services were not being offered as a common carrier. And the court properly found that there was nothing in the record to get there. That's why the appellant now has repackaged its, well, you should have been a common carrier argument, because that's the only way they get around it, because they can't show that Radiolink was a common carrier. So they say, well, because this license was designated for CMRS service, then if you weren't using it for that purpose, then you were acting improperly, and therefore we ought to treat you as a common carrier even if you weren't. Now, there's a bunch of problems with that, but one of the most obvious ones is that the argument the telesource is making, in essence, is that Radiolink acted illegally by not doing something that was illegal. And we follow through that. They focus on Rule 20.9 that says that these frequencies were supposed to be used for private or for commercial service, not for private. But what they ignore is that the license that was issued by the FCC was marked P for private. Now, the court, this Court in the first set of appeals said that that was not dispositive on the issue of what was being, what services were being offered. But it certainly is telling because that establishes the parameters of what Radiolink was allowed to do under its license issued by the FCC. It was allowed and permitted only to offer private mobile services. If Radiolink had done what telesource says it should have done, it would have been affirmatively acting unlawfully. And this Court cannot, it's just, it's just circular. The Court cannot find that because Radiolink didn't do something that was illegal that it should be punished by being treated as doing something else. I'm trying to understand, because was this argument that you are sort of de jure a common carrier, that's the way I would characterize it, that was that made before our decision in the earlier appeal? Is that our judgment? It was, Your Honor. It was specifically addressed in the first opinion, and it was not raised at the, in the trial proceedings on remand. It only resurfaced again once we, once we get to appeal. Well, that's what I'm trying to understand. Was this taken care of in the earlier appeal? We think it was. We think it was, Your Honor, that the Court specifically. Point me to. It would be at page 1005 of the opinion. Telesaurus argues that Radiolink must be deemed to be a common carrier because it was using the VPC frequencies which the FCC designated for use only by commercial mobile services. We reject this tautology. As explained above, the definition of commercial mobile services does not turn on the nature of the frequencies being used, but rather on whether the service, service being provided meets certain criteria. So that's it, Your Honor. And they try to come back and repackage it by using different epithets. Well, it's illegal. So we gave them leave to amend in order to allege that you really were. That's, that's, that's, that's. And they parroted the words, the statutory words, and then the district court said there's no basis in this record for doing this, and it's actually inconsistent with what you were arguing for. I agree 100 percent, Your Honor. And what happens and what's going on on this appeal is having failed in their effort to do what the this Court said they had the opportunity to try to do, now they've come back and repackaged the alternative argument which this Court has already rejected. Okay. Now, with respect to the sanctions? Well, with respect to the sanctions, Your Honor, the – first of all, there is a Ninth Circuit case which we believe is absolutely dispositive. This was cited in our Rule 28 letter. The case is Pan Pacific and Low Ball Cable Television at 987 Fed Second 594. And what happened in this case is that the Court initially awarded sanctions against a law firm, and then based upon the case law at the time, that the award against the law firm was set aside as an abuse of discretion because there was no individual lawyer sanction. On remand, the Court, without sanctioning the lawyer, sanctioned the principal. And if I might repeat – That case – that case is an interesting one, and it brings us to the point that was being made by your adversary. If I understand your position, you go to subsection C1 and you say there who can be sanctioned, and it says law firm or party that violated the rule or responsible for the violation. And then you want to use Low Ball. But in Low Ball, there was a finding that the party was the catalyst for the frivolous litigation. Where – I've been looking. I can't find anything in the record that there was evidence that was placed before the district court where the district court could find that this party was a catalyst to the frivolous litigation. Well, Your Honor, I can't say that Judge Wake's decision used that term. But the record unequivocally supports that type of finding. But did he make – did he make a finding on the conduct of the party? He certainly did. He found that the party was responsible. That's what his order was all about. And what we know from just looking at the record – But what facts did he rely on? Did he indicate what facts he relied upon to show as in Low Ball that there was a catalyst for the frivolous litigation by the party? Your Honor, I can't speak to – well, I can speak to what he found. But his findings or whatever is in his order. But what I can tell the Court is that – He lived with the litigation for a long time, I take it. That's correct, Your Honor. But what I can tell the Court is that Mr. Havens, the principal of Telesaurus, was directly involved. And the Court will recall that when we filed the motion, the first response that we got was advice of counsel. I'm not responsible. I relied on my lawyer. Based upon that, the district court required the plaintiff to turn over the communications with counsel. And the communications showed that this was entirely client-driven. The lawyer said, well, okay, this is the roadmap. These are the elements that you must meet, and we can do this if you have support, if you have factual support. That puts it back to the plaintiff. But more than that, Your Honor, if the Court – one of the reasons that, quite frankly, we didn't attack any of the lawyers is because there was never a lawyer involved in the case long enough to be responsible. Yes. Every time something would happen, they would change counsel. Are these the same lawyers that were involved in the other appeals? No, Your Honor. The lawyers now are different lawyers that handled the case on remand, who are different lawyers that handled the prior appeal, who are different lawyers that handled the first round of litigation in district court. At every stage, it's been different lawyers. And what happened is that in the midst of the summary judgment proceedings, there was a change in counsel. And during that period, Mr. Havens was essentially representing himself. I mean, he would – what he would do is he would prepare these lengthy, detailed documents. There was a declaration. That's clear. So he's got – you've got evidence in the record, but there has to be finding. There was never a finding by the trial judge. Well, Your Honor, let me look at the – at what the Court found. I think that – well, first of all, I'm not sure the case says there must be a finding. The case says that these are the circumstances under which you got to – if you're going to penalize somebody, I can't imagine you wouldn't have findings in the record. Your Honor, let me – if I might, I will. Well, Your Honor, I don't want to use up your time. Why don't you do it afterwards and just give us a citation to where those findings  are. I just haven't found them. But suppose you get by – then that brings us to the argument that counsel made of the unrepresented party or lawyer of B. That is, he will argue you can't do that because over in B it says that you can only sanction an attorney or an unrepresented party. Well, first of all, the official comment to the rule says that the sanctions may be imposed against the party, the attorney, or both, or the attorney, the party, or both. So we've got that in the comment. Then we've got the Pan-Pacific and Lobol case, which is authority in this circuit that the Court can do exactly what it did here. If the rule were otherwise, if the rule were as Telesaurus wants it to be, then the Pan-Pacific and Lobol case cannot stand. Yeah. So I think that is the answer to that. And – Okay. Well, don't worry about the other part. I can find that later. Well, I just reread Judge Wake's order as I was sitting here, and then I just reread Rule 11. I see nothing in Judge Wake's order on Rule 11 saying why he concludes that the party rather than the lawyers are the responsible parties for having caused the violation. But I also see nothing in Rule 11 that requires a specific finding to that effect. I think that's the point, Your Honor. I don't disagree. I mean, as I said before, the order says what it says, and I'm looking at it, too, and I don't see specific findings to that effect. But that seems to me a matter more of form than substance. If the – this – this – on this aspect of the case, on the Rule 11, the decision is ruled – is reviewed as under an abuse of discretion standard. So unless – unless the Court finds that the district court abused its discretion in making the award, the award should be affirmed. And there is nothing in – specifically in Rule 11 that requires findings of any sort, and there's nothing in the Pan-Pacific and Lobau case that requires specific findings on this particular issue, that is, the sanctions against the represented party as opposed to – to counsel. It's just that normally we find findings, especially when money is being circulated. I'm not disagreeing with that, Your Honor, and yet this is the record we have. I mean, the same issue comes up as to the amount of the sanctions. No one – no one raised that. No one objected to the amount. Therefore, there was – there was no discussion, no record was made, no findings. No objection to there being no findings. That's correct, Your Honor. Certainly no one – no one on Telesaurus's side said that this is – this order is not in the Pan-Pacific, but it's in the Lobau case, and it's in the Pan-Pacific  So they objected to the findings. They objected to the substance of it, but no one objected to the – to the form. They're not arguing that the attorney should have been sanctioned. Well, I don't think that's – that's hard. I mean, if you – if the Court will recall, I guess I'll part with this. If the – again, the initial – the initial reaction of Telesaurus was I relied on advice of counsel, which is another way of saying you should have sanctioned the lawyer, not me. For that – all of those reasons, Your Honor, we ask that the – both the judgment on the merits and the sanctions award be affirmed. Thank you. Got it. Okay. Response? Pelley's argument emphasizes something. The motion that was filed was not the motion that had been presented to Telesaurus in the first place. That motion, that draft motion, which was required under Rule 11, said we're going to take aim at the second amended complaint, we're going to take aim at you lawyers, and we're going to take aim at Telesaurus. What the actual motion said was now we're going to take aim at things that happened after the filing of the second amended complaint, and critically, we're going to take the lawyers out. And so if you think that there wasn't a vigorous defense on certain points like the amount, it's because the lawyers were off the hook. This creates a direct conflict with the whole point of the 1993 amendments to Rule 11, which was to avoid this kind of tactical use of Rule 11 sanctions. And it created a very palpable impropriety here where the client himself was – or itself, Telesaurus, was put in a position of waiving its – its – Are you arguing that the – that sanctions should have been imposed on prior counsel? No, not at all. Not at all. All I am saying is that this – this motion was so different from the motion that had been presented in – that it violated the entire point of the 21-day safe harbor provision of subsection C. Help me again understand why it's different. Okay. It leaves out the lawyer. Yes. And you're saying that's wrong because it now creates a conflict of interest. The lawyer doesn't want to defend against it now because if he defends against it, he's going to have to say, no, it was me, it was sanctioned. What's the problem? It changes – it changes the tenor of it. All of a sudden it creates a situation where now the defense is not that you did something wrong, but there is something wrong in the – It's a violation of the safe harbor provision? It certainly – it certainly violates the safe harbor provision. They didn't file the same motion. And this motion wasn't just immaterial. These were – these were central changes. And that – that whole point about the 1993 amendments, let me address something very quickly. The Pan Pacific v. Lobol case appears to predate the 1993 amendments entirely because it refers to signature. And if you read that case carefully, you will see that the client who was involved was reachable under two theories. One was – was the – was the actual signature. And so to say that since the 1993 amendments replaced the requirement of signature with presentation, it doesn't appear to be the right – right case. I want to emphasize that there was, in fact, ample, ample support for – from the second amended complaint. That was what the draft – that was what the draft motion was all about. The actual motion said – said second amended complaint and all this other stuff that came after. But if you – if the second amended complaint is the point at which this – this sanctions order should be evaluated, and we argue that it has to be since that is the basis of the sanctions order. Then there were – there was ample evidence. There were no circumstantial evidence. I know you're over time, but help me if you can on this one. Put into one side the fact that we're no longer after the lawyers. So when the motion is made again, okay, I really want my sanctions, what else is different that's material that should make a difference? I think it makes a difference for them to emphasize, well, look at all this – all this stuff they didn't do after they filed the – filed the complaint. Because all of a sudden, it invites – it changes the entire – the whole point was the original idea of a 21-day safe harbor, which was very, very controversial and fought and put into the new rule. Don't give me that. Let's talk about the history. But what do you want? Do you want – did you want another – did – did counsel ask that there be another safe harbor so that you could have an opportunity to withdraw allegations or what – what? The point is, is that by – what counsel thought the original motion was supposed to be about was did you have enough – did you have enough to plead at least on information and belief that there was, one, interconnected service and, two, offering to some portion of the public? And sure enough, you know, Mr. Richard and Mr. Schleyer believed that the history of co-location of specialized motor – mobile radio, the MARSEC history, you know, the fact of co-located operations of white tanks, that there were solicitations to bus – to school bus and public agencies, that all of that constituted at least sufficient evidence to go forward on information and belief. You're talking about the substance of the – That's right. And if that was the point, they understood that to be what the rule – the draft Rule 11 sanctioned to be. And now comes a second motion, much, much later, 15 months later, that adds more to it, and all of a sudden, they're no longer on the hook for it, first of all. It's now all about all the stuff that came after the filing of the complaint as opposed to the original. But as I read what comes later, when you say it's all about what comes after, what it's designed to do is to demonstrate that at the time of filing the second amendment complaint, there was insufficient basis for it. But at the time, the thing is that they had already conducted enough investigation to establish that there had been co-located operations which were on a CMRS basis because they were SMR in that zone. It had to be. There was the Marzek opinion, which has to serve as evidence that the FCC regarded the power radio link operations to be on CMRS basis. And there's a – you know, the whole point is that if you do advertise, even by word of mouth, that can be at least a genuine point. You can argue whether that is sufficient for common carrier availability to the public purposes. And that's why the original motion, the difference between the original draft motion presented for purposes of the 21-day safe harbor and the later motion is fatal because it didn't give our side any real notice of what it was that they were supposed  Thank you very much. Thank both sides for your argument. To Telesaurus v. Power and Radio Link now submitted for decision. Thank both sides for your arguments.
judges: WALLACE, SCHROEDER, FLETCHER